UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LISA MARIE PUGH,

Plaintiff,

v.

KEITH DEVOS, *et al*.,

Defendants.

CASE NO. 3:24-cv-05376-DGE-DWC

ORDER DECLINING SERVICE AND TO SHOW CAUSE

Plaintiff Lisa Marie Pugh, proceeding *pro se*, filed this civil rights action under 42 U.S.C. § 1983. Currently before the Court are Plaintiff's motion to proceed *in forma pauperis* ("IFP motion") and proposed complaint. Dkts. 11. 11-2. Having reviewed both filings, the Court directs Plaintiff to show cause with respect to the IFP motion or pay the $405.00 filing fee. Plaintiff is also directed to file an amended complaint correcting the pleading deficiencies identified below.

## I. BACKGROUND

Plaintiff is currently housed at the Special Commitment Center ("SCC")—a facility owned and operated by the Washington State Department of Social and Health Services ("DSHS") that provides mental health treatment for civilly committed sex offenders who

completed their prison sentences. Dkt. 11-2; *see also* WASHINGTON STATE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, Special Commitment Center: What We Do, BEHAVIORAL HEALTH ADMINISTRATION, *https://www.dshs.wa.gov/bha/special-commitment-center* (accessed August 28, 2024). Plaintiff lists six individuals as defendants in this action and each is an employee of the State of Washington: Keith Devos, Tabatha Yockey, Shawn Candela, Dr. Deborah Havens, Dr. "Jane Doe," and Dr. Horwitz. *Id.* at 2.

Under the "Legal Claims" heading of the proposed complaint, Plaintiff alleges violations of the Eighth and Fourteenth Amendments to the United States Constitution. *Id.* at 4. Although the precise nature of her[1] claims is difficult to follow, Plaintiff appears to challenge the two aspects of her confinement at SCC: (1) the alleged delay and/or denial in providing hormone replacement therapy and (2) the alleged refusal to transfer her to "transgender housing." *Id.* at 3.

As relief, Plaintiff seeks monetary damages and an injunction requiring medical providers at SCC to prescribe female hormones to her. *Id.* at 4.

## II. IFP MOTION (DKT. 11)

The right to proceed *in forma pauperis* is not absolute. *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990). Rather, proceeding *in forma pauperis* is a matter within the sound discretion of the trial court in civil actions. *Weller v. Dickson*, 314 F.2d 598, 600 (9th Cir. 1963). Here, the IFP motion shows Plaintiff has $40.41 cash on hand, a current balance of $327.08 in an account at SCC, and a balance of $32,940.40 in a checking account from an out of court settlement. Dkt. 11 at 1–5. A declaration filed in support of the IFP motion states that Plaintiff does not currently have access to the checking account containing the settlement funds, but the declaration does not address when access to the checking account will be restored. Dkt. 9. It thus appears Plaintiff has

[1] By using Plaintiff's preference for female pronouns, the Court takes no position on any issue in this case. It remains Plaintiff's burden to plead and prove all elements of her claims.

sufficient funds to pay the filing fee despite currently lacking access to some of those funds. As such, Plaintiff is ordered to pay the filing fee or provide a more thorough explanation for when access to her settlement funds will be restored.

## III. SCREENING PROPOSED COMPLAINT (DKT. 11-2)

The Court is required to screen complaints brought by individuals proceeding *in forma pauperis. See* 28 U.S.C. § 1915(e); *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) ("section 1915(e) applies to all *in forma pauperis* complaints, not just those filed by prisoners."). As part of this screening, the Court must "dismiss the complaint, or any portion of the complaint, if the complaint: (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2); *see Barren v. Harrington*, 152 F.3d 1193 (9th Cir. 1998). The Court is required to liberally construe *pro se* documents. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). However, even *pro se* pleadings must raise the right to relief beyond the speculative level and must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

As Plaintiff seeks to proceed in this matter *in forma pauperis*, the Court screens her proposed complaint as required by 28 U.S.C. § 1915(e). The Court first notes Plaintiff did not prepare her proposed complaint using the appropriate form and must do so for any amended pleadings. Also, the proposed complaint includes many misspellings, typos, and missing words. While perfect syntax and grammar are not required of *pro se* litigants, the errors in Plaintiff's proposed complaint are so numerous that they detract from the clarity of her claims and make it difficult to understand her factual allegations. In any amended pleadings, Plaintiff must present her claims in a simple, clear, and direct manner. She should not make legal arguments or include

a complex jurisdictional statement; instead, she should follow the court-provided form and focus on explaining, in simple terms, all facts and circumstances supporting her claims.

Plaintiff's proposed complaint also has several substantive deficiencies. The Court will address each deficiency below and explain how Plaintiff may cure the deficiencies in any amended pleadings.

**A.     Plaintiff is a Civil Detainee**

Before turning to its discussion of Plaintiff's substantive deficiencies, it is important to frame that discussion in light of Plaintiff's status as a civil detainee committed to a secure facility as opposed to a prisoner serving a criminal sentence of confinement. As a civilly committed individual, Plaintiff is entitled to more considerate treatment and conditions than those for whom conditions of confinement are designed to punish. *Youngberg v. Romeo*, 457 U.S. 307, 319–22 (1982) (stating that individuals who are involuntarily civilly committed have constitutionally protected rights under the due process clause to reasonably safe conditions of confinement). Unlike convicted prisoners, a civilly detained person cannot be subject to conditions amounting to punishment, but they may be subject to unfavorable conditions if those conditions further a nonpunitive interest like the "effective management of a detention facility." *See Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004). Nevertheless, court decisions which define the constitutional rights of prisoners can be relied upon to establish a floor for the constitutional rights of those who are civilly detained. *Padilla v. Yoo*, 678 F.3d 748, 759 (9th Cir. 2012); *Hydrick v. Hunter*, 500 F.3d 978, 989 n. 7 (9th Cir. 2007). Thus, in screening Plaintiff's proposed complaint, the Court looks to decisions defining the rights of prisoners.

**B. Personal Participation by Individual Defendants**

First, Plaintiff does not adequately explain how each defendant personally participated in causing the alleged injuries, which is a requirement for stating a cognizable § 1983 claim against individual defendants.

To state a claim under 42 U.S.C. § 1983, a plaintiff must show: (1) she suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a "person" acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Thus, the first step in pleading an individual capacity § 1983 claim is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). On step two, a plaintiff must allege facts showing how an individual defendant caused, or personally participated in causing, the harm alleged in the complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). A claim may not be brought on the theory of supervisory liability, meaning a defendant cannot be held vicariously liable for the acts of his or her subordinates. *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Monell v. New York City Dep't of Social Servs*., 436 U.S. 658, 691 (1978). Rather, a plaintiff must show a defendant (1) personally participated in or directed the alleged harm or (2) knew of the specific harm alleged and failed to act as required to prevent it. *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998), *cert. denied*, 525 U.S. 1154 (1999). These allegations must be supported by specific facts and circumstances demonstrating personal involvement as sweeping and conclusory allegations against a defendant are insufficient to state a claim for relief. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

Here, Plaintiff provides few details about the specific actions a defendant took or failed to take that directly violated her constitutional rights. The general allegations that defendants failed to adopt certain policies with respect to transgender healthcare or housing are not enough to

demonstrate a particular defendant's knowledge of, personal involvement in, and responsibility for causing her specific injuries. Given the lack of information demonstrating personal involvement, it appears Plaintiff is attempting to hold several defendants liable for actions taken in their supervisory capacities, not for their direct involvement in the circumstances giving rise to her claims.

Therefore, in any amended pleadings, Plaintiff should only name an individual as a defendant if she can provide sufficient facts demonstrating their personal participation in causing her alleged injuries. Sweeping, broad, or conclusory allegations about all defendants will not suffice. To cure this deficiency, Plaintiff must offer additional facts demonstrating the ways in which a specific defendant's actions or inactions directly violated her constitutional rights.

**C. Hormone Treatment Claim**

Turning to her specific claims for relief, Plaintiff first alleges violations of the Eighth and Fourteenth Amendments arising out of SCC's failure to provide her with hormone replacement therapy. Dkt. 1 at 3–4. Like a pretrial detainee, a civil detainee's rights to adequate medical care and safety arise under the due process clause of the Fourteenth Amendment, not the Eight Amendment. *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1120 (9th Cir. 2018); *Smith v. Washington*, 781 F. App'x 595, 598 (9th Cir. 2019) (applying legal standards for claims under the Fourteenth Amendment, rather than the Eighth Amendment, to claims of civil detainees). The elements of such a claim are: (1) "the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined," (2) "those conditions put the plaintiff at substantial risk of suffering serious harm," (3) "the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's

conduct obvious," and (4) "by not taking such measures, the defendant caused the plaintiff's injuries." *Gordon*,. at 1125.

With respect to the third element, "the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case." *Id.* (omitting internal punctuation and quotation marks). "'[M]ere lack of due care'" is not enough; "the plaintiff must 'prove more than negligence but less than subjective intent—something akin to reckless disregard.'" *Id.* (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016)).

The factual allegations giving rise to Plaintiff's first claim about hormone replacement therapy are sparse and difficult to follow. Plaintiff merely states that she sent a letter requesting hormone treatment, her request was referred to the "transgender committee" at SCC, and, at one point, she was seen by an unnamed medical provider about her "current status as a transgender woman." Dkt. 11-2 at 3. From this, it appears Plaintiff is complaining about a delay in providing the hormone treatment she requested. This claim is lacking in several significant ways: there are no allegations describing Plaintiff's need for medical treatment, who was responsible for making decisions about her treatment, what information was available to that individual when treatment decisions were made, or the impacts any denial and/or delays in providing the requested medical treatment had on Plaintiff. Most importantly, it is unclear whether Plaintiff has been officially diagnosed with any medical condition—and, if so, by whom and when—or whether the diagnosis for a medical condition is ongoing.

Therefore, in any amended pleadings, Plaintiff should only include a claim based on the denial and/or delay in providing hormone treatment if she can provide sufficient information to support such a claim. If Plaintiff has received an official diagnosis, she must identify her medical condition, the need for treatment, what risks she faced—if any—from denied or delayed

treatment, what specific actions a defendant took or failed to take that caused her harm, and what a reasonable person in that defendant's shoes would have known about her medical condition and the risk of harm she may have faced without timely treatment for that condition. If Plaintiff is still in the process of being diagnosed, she must offer additional facts showing how the delays in her diagnosis satisfied each of the enumerated elements above.

**D.        Failure to Transfer Claim**

Plaintiff's second claim appears to be premised on the alleged failure to transfer her to "transgender housing" after she requested such a transfer. Dkt. 11-2 at 3–4. However, Plaintiff has no standalone constitutional right to be transferred to different housing. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 225–27 (1976). And although SCC officials are required to take reasonable steps to ensure the health and safety of civil detainees, *see generally Farmer v. Brennan*, 511 U.S. 825, 834 (1994), the proposed complaint includes only a brief reference to transfer-related safety concerns. Because Plaintiff does not allege sufficient facts showing how she is at a "substantial risk of serious harm" in her current housing assignment, her claim based on failure to transfer is deficient. *See, e.g.*, *Smith*, 781 F. App'x at, 597–98 (citing *Casto*, 833 F.3d. at 1071). This claim is also deficient because Plaintiff does not identify who was responsible for denying her transfer request or what information was available to that person when the transfer decision was made.

Therefore, in any amended pleadings, Plaintiff should only include a claim based on failure to transfer if she can allege sufficient facts demonstrating a real and substantial risk of harm posed by her current housing assignment. In addition, Plaintiff must be able to identify the defendant or defendants who were directly responsible for the decision not to transfer her and explain what information those individuals knew about her situation and any risks associated with maintaining her current housing assignment.

**E. Instructions for Filing Amended Pleadings**

Due to the deficiencies described above, Plaintiff's proposed complaint does not put forth a viable claim for relief. If Plaintiff intends to pursue this § 1983 civil rights action, she must file an amended complaint and within it, she must write a short, plain statement telling the Court: (1) the constitutional right Plaintiff believes was violated; (2) the name of the person who violated the right; (3) exactly what the individual did or failed to do; (4) how the action or inaction of the individual is connected to the violation of Plaintiff's constitutional rights; and (5) what specific injury Plaintiff suffered because of the individual's conduct. *See Rizzo v. Goode*, 423 U.S. 362, 371–72, 377 (1976). Each claim for relief must be simple, concise, and direct.

Plaintiff must present the amended complaint on the form provided by the Court. The amended complaint must be legibly rewritten or retyped in its entirety, it should contain the same case number, and it may not incorporate any part of the previous complaint by reference. The amended complaint will act as a complete substitute for the proposed complaint, and not as a supplement. Plaintiff should not attach exhibits to the amended complaint as any exhibit will not be considered as part of the amended complaint.

The Court will screen the amended complaint to determine whether it contains factual allegations linking each defendant to an alleged violation of Plaintiff's rights. The Court will not authorize service of the amended complaint on any defendant who is not specifically linked to a violation of Plaintiff's rights. Finally, the Court may recommend dismissal of any deficient claims reasserted in the amended complaint.

## IV. INSTRUCTIONS TO PLAINTIFF

For the above reasons, if Plaintiff intends to proceed in this action, she must accomplish the following on or before September 30, 2024:

1. Show cause why the IFP motion should not be denied or pay the $405.00 filing fee; and
2. File an amended complaint curing the pleading deficiencies described above.

Failure to respond to this Order by (1) showing cause or paying the filing fee and (2) filing an amended complaint by the stated deadline shall be deemed a failure to properly prosecute and will result in a recommendation of dismissal.

Alternatively, Plaintiff may choose to voluntarily dismiss this action pursuant to Rule 41(a)(1)(A) of the Federal Rules of Civil Procedure on or before the stated deadline.

The Clerk of Court is directed to note Petitioner's IFP motion (Dkt. 11) for consideration on September 30, 2024. The Clerk is further directed to send Plaintiff the appropriate forms for filing a 42 U.S.C. § 1983 civil rights complaint. The Clerk is also directed to send copies of this Order and *Pro Se* Instruction Sheet to Plaintiff.

Dated this 29th day of August, 2024.

David W. Christel
United States Magistrate Judge